UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEBBIE L. RUFF,                    )
                                   ) No. CV-04-418-CI
            Plaintiff,             )
                                   ) ORDER GRANTING MOTION FOR
v.                                 ) LEAVE TO FILE EXCESS PAGES,
                                   ) DENYING DEFENDANT'S MOTION FOR
JO ANNE B. BARNHART,               ) SUMMARY JUDGMENT, GRANTING IN
Commissioner of Social             ) PART PLAINTIFF'S MOTION FOR
Security,                          ) SUMMARY JUDGMENT AND REMANDING
                                   ) FOR ADDITIONAL PROCEEDINGS
            Defendant.             ) PURSUANT TO SENTENCE FOUR OF
                                   ) 42 U.S.C. § 405(g)

    BEFORE THE COURT are cross-Motions for Summary Judgment (Ct.
Rec. 13, 18), noted for disposition without oral argument on October
3, 2005.[1]   Attorney Gary Penar represents Plaintiff; Special
Assistant United States Attorney L. Jamala Edwards represents
Defendant.   The parties have consented to proceed before a

_____

    [1]Also before the court is Defendant's Motion for Leave to File
Excess Pages. (Ct. Rec. 17.) In light of the length of Plaintiff's
brief (34 pages) and the administrative record (1340 pages), and
without objection from Plaintiff, the Motion is **GRANTED.**

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL
PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 1

magistrate judge. (Ct. Rec. 3.)  After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS IN PART** Plaintiff's Motion for Summary Judgment and remands for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

Plaintiff, 49-years-old at the time of the second administrative decision, filed a second[2] application for Social Security disability benefits on December 15, 2000, alleging onset as of August 15, 1996, due to physical impairments including diabetes, complications from back injuries, and vision, intestinal and feet problems.  (Tr. at 68, 81.)  Plaintiff, a high school graduate, had relevant past work as a secretary / administrative assistant.  (Tr. at 12.)  Following a denial of benefits at the initial stage and on reconsideration, a hearing was held before Administrative Law Judge Richard Hines (ALJ).  The ALJ denied benefits; review was granted by the Appeals Council and the claim was remanded for additional administrative proceedings.  A second administrative hearing was held; the ALJ again denied benefits. This appeal followed.  Jurisdiction is appropriate pursuant to 42 U.S.C. § 405(g).

**ADMINISTRATIVE DECISION**

The ALJ concluded Plaintiff met the non-disability requirements for a period of disability and was insured for benefits through

_____

[2]Plaintiff previously filed for benefits in 1992; that application was denied May 8, 1995.  There is no challenge to the ALJ's determination not to re-open the prior application.  (Tr. at 1333.)

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 2

March 31, 2000.  Plaintiff had not engaged in substantial gainful activity and had severe impairments, but those impairments did not meet the Listings.  The ALJ further concluded Plaintiff's mental impairment created no more than a minimal limitation on her ability to work, as well as non-severe physical impairments including carpal tunnel syndrome, coronary artery disease and history of back surgery and pain.   (Tr. at 14.)  The ALJ concluded Plaintiff's testimony was not fully credible and that she retained the residual capacity to perform light work with only postural and environmental limitations.  The ALJ found Plaintiff was able to perform her past relevant work as a secretary / administrative assistant; thus, he concluded there was no disability.

## ISSUES

The question presented is whether there was substantial evidence to support the ALJ's decision denying benefits and, if so, whether that decision was based on proper legal standards. Plaintiff asserts the ALJ erred when he (1) improperly rejected the disability opinion of treating physician Dr. McKinney and failed to use a medical expert to establish a disability onset date; (2) improperly rejected her testimony as not credible; (3) failed to properly evaluate Plaintiff's residual capacity pursuant to SSR 96-8; (4) failed to pose a proper hypothetical and perform a functional analysis of her past job as required by SSR 82-62; and (5) failed to properly reject the statement of witnesses as to Plaintiff's residual capacity during the period at issue.

## STANDARD OF REVIEW

In *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), the

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 3

court set out the standard of review:

The decision of the Commissioner may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id.* at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Morgan v. Comm'r of Soc. Sec. Admin.* 169 F.3d 595, 599 (9th Cir. 1999).

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The ALJ's determinations of law are reviewed *de novo*, although deference is owed to a reasonable construction of the applicable statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).

**SEQUENTIAL PROCESS**

Also in *Edlund*, 253 F.3d at 1156-1157, the court set out the requirements necessary to establish disability:

Under the Social Security Act, individuals who are "under a disability" are eligible to receive benefits. 42 U.S.C. § 423(a)(1)(D). A "disability" is defined as "any medically determinable physical or mental impairment" which prevents one from engaging "in any substantial gainful activity" and is expected to result in death or last "for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Such an impairment must result from "anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Act also provides that a claimant will be eligible for benefits only if his impairments "are of such severity that he is not only unable to do his previous work but cannot, considering his age, education and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . " 42 U.S.C. § 423(d)(2)(A). Thus, the definition of disability consists of both medical and vocational components.

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 4

In evaluating whether a claimant suffers from a disability, an ALJ must apply a five-step sequential inquiry addressing both components of the definition, until a question is answered affirmatively or negatively in such a way that an ultimate determination can be made. 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f). "The claimant bears the burden of proving that [s]he is disabled." *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). This requires the presentation of "complete and detailed objective medical reports of h[is] condition from licensed medical professionals." *Id.* (citing 20 C.F.R. §§ 404.1512(a)-(b), 404.1513(d)).

**ANALYSIS**

1.  Opinion of Treating Physician

Plaintiff asserts the ALJ failed to properly reject the opinion of her treating physician, Dr. McKinney, who opined in 2002 that Plaintiff was disabled due to a "complicated medical history" involving diabetes, breast cancer, degenerative disc disease of the lower back, and "significant problems with depression and anxiety." (Tr. at 878.) Although Dr. McKinney did not render an opinion as to the onset of disability, Plaintiff contends the ALJ had a duty to call a medical expert to secure a retrospective opinion as to date of onset. Defendant contends there was no duty to further develop the record because Dr. McKinney's opinion was rendered two years after the date of last insured.

In a disability proceeding, the treating physician's opinion is given special weight because of his familiarity with the claimant and his physical condition. *See Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989). If the treating physician's opinions are not contradicted, they can be rejected only with "clear and convincing" reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). If contradicted, the ALJ may reject the opinion if he states specific,

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 5

legitimate reasons that are supported by substantial evidence. *See Flaten v. Secretary of Health and Human Serv*., 44 F.3d 1453, 1463 (9th Cir. 1995); *Fair*, 885 F.2d at 605.   While a treating physician's uncontradicted medical opinion will not receive "controlling weight" unless it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," Social Security Ruling 96-2p, it can nonetheless be rejected only for "'clear and convincing' reasons supported by substantial evidence in the record." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)).   Furthermore, a treating physician's opinion "on the ultimate issue of disability" must itself be credited if uncontroverted and supported by medically accepted diagnostic techniques unless it is rejected with clear and convincing reasons. *Holohan*, 246 F.3d at 1202-03.   Historically, the courts have recognized conflicting medical evidence, the absence of regular medical treatment during the alleged period of disability, and the lack of medical support a doctor's report based substantially on a claimant's subjective complaints of pain, as specific, legitimate reasons for disregarding the treating physician's opinion.   *See Flaten*, 44 F.3d at 1463-64; *Fair*, 885 F.2d at 604.

The medical evidence in this case is voluminous, about 1000 pages of doctor and hospital notes and reports.  A review of those notes indicates Plaintiff's primary condition of Type I diabetes mellitus contributed significantly to secondary problems involving abdominal pain, urinary tract infections, chest pain, and vision problems.   Clinical notes demonstrate treatment for diabetic

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 6

ketoacidosis (DKA) from 1982 through 1998 on 17 occasions, averaging twice a year. (Tr. at 920, 965-992, 1026, 1032, 1068, 1109, 1159, 1191, 1213, 1243, 1248.) Treatment for secondary urinary tract infections occurred at least five times from 1989 through 1999. (Tr. at 636, 663, 1068, 1033, 1201.) Plaintiff underwent seven eye surgical treatments (panretinol photocoagulation) in 1998-1999. (Tr. at 942, 946, 962.) However, the records indicate these were day surgeries without permanent impairment or limitation of eyesight. (Tr. at 669.) Additionally, she was treated on numerous occasions for digestive/stomach issues diagnosed at various times as gastritis, gastroparesis, gastro-esophageal reflux disease (GERD), and irritable bowel syndrome. (Tr. at 242, 358, 399, 493, 504, 663, 665, 649.) Symptoms included pain and vomiting, but those resolved with diabetic control. Finally, there are records indicating heart incidents, but objective findings were minimal with some indication the symptoms were due to gastro-esophogeal pain, secondary to poor diabetic control and management. (Tr. at 441, 627, 628, 655, 657, 661, 898, 924, 1159, 1225, 1243.) Finally, there is significant evidence, during the time at issue, Plaintiff failed to test her blood sugar and record those findings as instructed by her health providers, information critical to the successful control of the disease. (Tr. at 641, 654, 656, 661.)

The medical evidence with respect to Plaintiff's spinal condition reveals Plaintiff fractured her tail bone in late 1992 and underwent coccyx removal, an epidural block, and treatment for

infection at the surgical site during 1993.[3] (Tr. at 138, 266, 288, 897.) Additionally, an MRI in December 1993 indicated degenerative disc disease at L4-5 with central protrusion, but without evidence of intervertebral disc herniation or spinal stenosis. (Tr. at 331.) After Plaintiff sustained a fall on the ice in February 1994 (Tr. at 1138), pain medication injections were given for low back pain reported in May, June and July 1994 (Tr. at 1144-1153) and again in April 1996 (Tr. at 1211); however, an x-ray of her spine in April 1996 was normal. (Tr. at 1217.) Accordingly, there is no evidence to indicate severe back impairment which meets the durational requirement and the time frame at issue.[4]

Additionally, Plaintiff was treated by medical providers during this time for depression, anxiety, and chronic pain. A psychiatric evaluation in 1994 indicated chronic pain due to her back condition; Plaintiff reported her diabetes was "stabely maintained." (Tr. at

------

[3]There are no medical records to substantiate Plaintiff's claim she was hospitalized for an entire year following this surgery due to treatments for infection. Rather, the record indicates Plaintiff underwent debridement of the surgical site in July, October, November 1993. (Tr. at 152, 268, 288.)

[4]There is evidence Plaintiff had back surgery in September 2000 after symptoms developed including severe pain, extremity weakness, urinary retention and stool incontinence. (Tr. at 580.) That condition, however, was the result of a twisting incident that same month, well after the date of last insured of March 2000. (Tr. at 581.)

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 8

1   405.)  She was oriented in all aspects, her speech clear, coherent,

2   and goal-directed with no evidence of psychotic process.  Her mood

3   was generally euthymic, her affect evidenced constricted, though

4   adequate, range, and her judgment and reality testing were intact.

5   Plaintiff was diagnosed with adjustment reaction with depressed mood

6   (Plaintiff was in the process of moving from Valdez to Anchorage),

7   rule  out  depression  nos,  narcotic  dependence,  and  a  global

8   assessment of functioning (GAF) at 60, the high end of moderate

9   limitations.  DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH

10  EDITION (DSM-IV), at 32 (1995).  (Tr. at 407.)  There was a notation

11  Plaintiff  had  had  multiple  interpersonal  problems  with  her

12  providers, but denied being depressed.  (Tr. at 405, 898.)  Treating

13  providers prescribed Amitriptyline, Xanax, Clonopin, Ambien, Zoloft

14  and Sinequan and noted Plaintiff did not exhibit the normal signs of

15  clinical depression.  (Tr. at 405, 432.)  It was recommended that

16  Plaintiff  follow-up  with  additional  counseling,  but  there  are  no

17  records to indicate she did.

18     In 1998, Plaintiff was treated at Sacred Heart Hospital for

19  anxiety related to the return of her spouse to what she described

20  was a dysfunctional marriage with concerns for personal safety.

21  Plaintiff was treated for panic attack with Ativan and Xanax with

22  marked symptomatic improvement.  (Tr. at 485.)  Thus, during the

23  time at issue, there is no evidence any mental impairment affected

24  Plaintiff's ability to work.[5]

25

26     [5]In a psychological evaluation completed in January 2001, again

27  after the date of last insured and after back surgery, Plaintiff

28  ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING
    DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART
    PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL
    PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 9

In February 1997, Plaintiff underwent surgery for left carpal tunnel release. (Tr. at 478.) An examination in August 1997 did not mention any ongoing problem with her hands. (Tr. at 627-628.) In August 1999, Plaintiff reported complaints of pain in her right elbow, but there were no objective findings.[6] (Tr. at 660.) Plaintiff reported she was able to return to all her normal activities after an injection. In September 1999, the pain returned suggesting possible right ulnar nerve entrapment. However, Plaintiff refused any surgical treatment. (Tr. at 661.)

Plaintiff presented to Dr. McKinney at the Rockwood Clinic as a new patient on May 12, 2000. (Tr. at 676.) Prior to that, she consulted and was treated by Dr. Tom Chamberlin of the Rockwood Clinic after her arrival in the Spokane area in August 1997. At

_____

reported she had never been treated for a psychiatric disorder or participated in formal out-patient treatment. (Tr. at 718.) Plaintiff reported she participated in church activities several times during the week, including social activities. (Tr. at 723.) Diagnoses included mood disorder due to diabetes with depressive features, pain disorder associated with both psychological factors and general medical condition, with a GAF of 45, indicating serious limitations. (Tr. at 724.) DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV), at 32 (1995).

[6]Complaints were again made with respect to the left wrist in July 2000 after working on a tractor for a few days; there was slight swelling noted but full range of motion with no tenderness at the joints. (Tr. at 685.)

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 10

that time, Plaintiff denied any complications from her diabetes or that she was suffering from neuropathy. (Tr. at 622.) Dr. Chamberlin noted her diabetes was not well-controlled and that she had a very poor fund of knowledge regarding control. (Tr. at 628.) By September, Dr. Chamberlin noted blood sugars were still not under control; however heart tests were normal. (Tr. at 627.) Despite diet education, Plaintiff's meal intake remained irregular, particularly when she was engaged in gardening. (Tr. at 629.) Dr. Chamberlin's review of Alaska medical records in October 1997 revealed normal heart functioning. (Tr. at 630.) Plaintiff noted at that time she did not like to use her blood sugar meter in public. (Tr. at 631.) With diet control and checking blood sugars regularly, her diabetic control improved by December 1997. (Tr. at 634.)

Plaintiff was admitted to the hospital in March 1998 following development of positive ketones, nausea and vomiting for several days, secondary to a urinary tract infection. (Tr. at 636.) A course of antibiotics was prescribed. (Tr. at 638.) At this time, Plaintiff was also treated for a left foot injury after she fell while wall papering. (Tr. at 640.) It was noted that she was a housewife and enjoyed gardening. (Tr. at 637, 640.) In May, Plaintiff was noted to be suffering from an exacerbation of depression due to marital difficulties; as a result, she was poorly managing her diabetes. (Tr. at 641.) Zoloft was prescribed. In July 1998, Plaintiff was treated for anxiety and dehydration, secondary to heat exhaustion after lying in the sun for two days. (Tr. at 642.) Poor control continued into August 1998 due to

situational stressors, including marital difficulties.  (Tr. at 645.)  It was noted also Plaintiff was hospitalized in July for diabetic ketoacidosis as a result of a viral syndrome.  (Tr. at 645.)

In October 1998, Plaintiff reported for treatment of abdominal pain.  Her sugars were noted to be high (443) (Tr. at 648); a pelvic CT was ordered.   Plaintiff's care was then transferred to Dr. McKinney.    On October 19, 1998, Plaintiff complained to Dr. McKinney of abdominal pain and vomiting that had started a couple of weeks ago, became asymptomatic, then flared up again the day before her appointment.  Tests were ordered, but the CT scan was normal. (Tr. at 649.)  However, an EGD showed H. Pylori was treated secondary to gastroparesis.   Plaintiff was also diagnosed with irritable bowel syndrome. (Tr. at 650.)  Blood sugars were reported to be well controlled in November 1998.  (Tr. at 651.)

In January 1999, blood sugars were again running high and depression was evident.  Plaintiff refused to seek counseling or treatment for marital difficulties.  (Tr. at 654.)  In April 1999, after Plaintiff began a regular exercise program at a health club, she complained of tachycardia and palpitations.  Her electrocardiogram was normal.  (Tr. at 655.)  Plaintiff presented to urgent care following an episode of chest pain again in May 1999. An EKG showed sinus tachycardia with no acute change and no ischemic change.  The diagnosis was tachycardia arrhythmia with angina. (Tr. at 656.)  Diabetic medications were adjusted in June 1999, although it was noted Plaintiff did not provide her blood sugar records. Chest pains were under control with medication.  Plaintiff was also

1  complaining of tennis elbow.  (Tr. at 657.)

2      In September 1999, clinic notes indicate Plaintiff's blood
3  sugars were poorly controlled with little monitoring by Plaintiff.
4  (Tr. at 661.)  Zoloft was increased to counteract fatigue.  (Tr. at
5  661.)  Plaintiff was checked for kidney stones in October following
6  complaints of left side flank pain.  Plaintiff was treated for a
7  urinary tract infection and irritable bowel.  (Tr. at 663.)
8  Plaintiff was admitted to the hospital in November 1999 for kidney
9  stone treatment.  (Tr. at 545, 665.)  A CT scan showed mild
10 hydronephrosis on the left with multiple calcific areas in the
11 pelvis.  (Tr. at 545.)  A stent was inserted.  (Tr. at 552.)  An
12 oophorectomy was also performed.  (Tr. at 669.)  Plaintiff was
13 reported to be feeling quite well in February 2000, although her
14 blood sugars were poorly controlled.  (Tr. at 671.)

15      It was noted Plaintiff had had a tummy-tuck procedure done in
16 February 2000.  (Tr. at 679.)  Plaintiff was admitted to urgent care
17 for treatment of a migraine headache in March 2000.  (Tr. at 672.)
18 Plaintiff underwent removal of her gall bladder in May 2000 and the
19 pain in that region resolved.  (Tr. at 566, 678.)  Immediately
20 thereafter, Plaintiff was tested for a kidney stone, but none was
21 found.  (Tr. at 680.)  She was also treated for thyroiditis, left
22 carpal tunnel, and had surgical laminectomy and foraminotomy
23 performed at L4-5 in September 2000.  (Tr. at 579-80, 595-621.)
24 However, all of these conditions arose after the date of last
25 insured, March 31, 2000.

26      The court, after review of the medical record, concludes there
27 is no evidence of total disability as of the alleged onset date,

28 ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL
PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 13

August 15, 1996.  The only question remaining is whether disability is established prior to the date of last insured, March 31, 2000. Plaintiff stated she quit work in 1995 or 1996, because her husband retired and they moved to Spokane to be closer to medical care. (Tr. at 1264.)  She further stated she could no longer work because she was unable to sit for any length of time due to back surgery, subsequent treatment for infection at the surgical site, and a decision to postpone surgery at the L4-5 site.  (Tr. at 1264.)

The ALJ did not err when he failed to address Dr. McKinney's June 2002 opinion rendered after the ALJ's unfavorable decision in April 2002.  Dr. McKinney did not assume Plaintiff's care until May 12, 2000, after the date of last insured.  The ALJ reviewed the contemporaneous medical record in light of the alleged onset date (August 15, 1996) and date of last insured (March 31, 2000). Contemporaneous medical reports may be more persuasive than later reports.  *Magallanes v. Bowen*, 881 F.2d 747, 754 (9th Cir. 1989). The contemporaneous medical reports by treating physicians do not support a finding of disability.  Those records reflect treatment for back impairments and gastroenteritis, urinary tract infections, and chest pain secondary to poorly controlled and managed Type I diabetes mellitus, and depression and anxiety for which Plaintiff did not seek evaluation and treatment despite recommendations to the contrary.  At no time did any of the treating physicians note Plaintiff was disabled and should be restricted to certain exertional limitations; rather, the record indicates she engaged in "housewife" and church activities and enjoyed gardening.

The ALJ also relied on the opinion of the disability provider,

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 14

who assessed Plaintiff's residual functional capacity in March 2001 by non-examining physicians, who found Plaintiff capable of light exertion with additional postural and environmental limitations. (Tr. at 727-742.)   The opinion of a non-examining physician may be accepted as substantial evidence if it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995); *Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995).   The opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester*, at 831, citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990).   Cases have upheld rejection of an examining or treating physician based in part on the testimony of a non-examining medical advisor; but those opinions have also included reasons to reject the opinions of examining and treating physicians that were independent of the non-examining doctor's opinion. *Lester*, at 831, citing *Magallanes v. Bowen,* 881 F.2d 747, 751-55 (9th Cir. 1989) (reliance on laboratory test results, contrary reports from examining physicians and testimony from claimant that conflicted with treating physician's opinion); *Andrews*, 53 F.3d at 1043 (conflict with opinions of five non-examining mental health professionals, testimony of claimant and medical reports); *Roberts v. Shalala*, 66 F.3d 179 (9th Cir 1995) (rejection of examining psychologist's functional assessment, which conflicted with his own written report and test results).   Thus, case law requires not only an opinion from the consulting physician, but also substantial evidence (more than a mere scintilla, but less

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 15

1  than a preponderance), independent of that opinion which supports
2  the rejection of contrary conclusions by examining or treating
3  physicians.  *Andrews*, 53 F.3d at 1039.  Here, in light of the
4  medical evidence reviewed above, that opinion is supported by
5  substantial evidence.  Thus, the medical record supports the ALJ's
6  reliance on the RFC by the non-examining physicians.  Because there
7  was no basis for a disability finding, there was no need to secure
8  an opinion as to onset date.  *Armstrong v. Commissioner*, 160 F.3d
9  587, 589-90 (9th Cir. 1997) (medical expert not necessary when issue
10 of onset date is not a matter of inference).

11 2.  Credibility

12      Plaintiff contends the ALJ erred when he concluded Plaintiff's
13 testimony was not fully credible, contending there was a sufficient
14 medical record to find objective support for Plaintiff's complaints
15 and insufficient reasons for rejecting her subjective complaints.

16      In deciding whether to admit a claimant's subjective symptom
17 testimony, the ALJ must engage in a two-step analysis.  *Smolen v.*
18 *Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step,
19 see *Cotton v. Bowen*, 799 F.2d 1403, 1405 (9th Cir. 1986), the
20 claimant must produce objective medical evidence of underlying
21 "impairment," and must show that the impairment, or a combination of
22 impairments, "could reasonably be expected to produce pain or other
23 symptoms." *Id.* at 1281-82.  If this test is satisfied, and if there
24 is no evidence of malingering, then the ALJ, under the second step,
25 may reject the claimant's testimony about severity of symptoms with
26 "specific findings stating clear and convincing reasons for doing
27 so." *Id.* at 1284.  The ALJ may consider the following factors when

28 ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL
PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 16

weighing the claimant's credibility: "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). If the ALJ's credibility finding is supported by substantial evidence in the record, the court may not engage in second-guessing. *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999). If a reason given by the ALJ is not supported by the evidence, the ALJ's decision may be supported under a harmless error standard. *Curry v. Sullivan*, 925 F.2d 1127, 1131 (9th Cir. 1990) (applying the harmless error standard); *Booz v. Sec'y of Health and Human Serv.*, 734 F.2d 1378, 1380 (9th Cir. 1984) (same). Here, there is no evidence Plaintiff was malingering; thus, the reasons for rejecting her testimony must be clear and convincing.

The ALJ noted Plaintiff's complaints were not supported by objective medical findings or history (Tr. at 13, 15); treatment notes reported "dramatic and hysterical medical seeking behavior"; Plaintiff was observed to be able to perform maneuvers she had previously claimed to be unable to do; Plaintiff had a history of lack of compliance with diabetic management and control; and she had exhibited disability-seeking behaviors. (Tr. at 15.)

Under the *Smolen* analysis, there is sufficient evidence of objective medical findings to support a basis for subjective complaints of pain. *Id.* at 1281-82. The second prong of *Smolen*

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 17

requires consideration of "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [his/her] testimony and [his/her] conduct, [claimant's] daily activities, [his/her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). Here, the ALJ noted Plaintiff's complaints were not supported by objective findings, no treating physician found her totally disabled during the period at issue, and Plaintiff had failed to follow treatment protocol both with respect to control of her diabetes and also with respect to mental health treatment. Under Social Security law, a claimant has a duty to follow a prescribed course of treatment and failure to do so casts doubt on credibility. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). These reasons are clear and convincing and supported by the record. Additionally, during the time at issue, Plaintiff reported she had engaged in housekeeping activities, gardening, running a tractor, wallpapering/painting a bathroom, embroidery, attended church activities several times a week, read for extended periods of time, and drove an automobile. (Tr. at 637, 659, 676, 685, 723, 877, 1298.) The ALJ did not err in rejecting Plaintiff's testimony as not fully credible.

3.    <u>Residual Functional Capacity</u>

Plaintiff contends the ALJ failed to take into account her ability to perform work on a sustained basis as required under SSR 96-8p, eight hours a day, five days a week, in light of the frequency of her doctor appointments and hospitalizations.

Additionally, Plaintiff contends the ALJ failed to consider her non-severe limitations, including anxiety, depression, pain disorder, diabetic neuropathy or retinopathy with hemorrhaging, and daily vomiting.  Rather, Plaintiff argues the ALJ's conclusion was based solely on the opinion of the non-examining physician, without first re-contacting and obtaining a medical statement from the treating physicians as to Plaintiff's ability to perform work related functions.

Under SSR 96-5P, the ALJ is directed to re-contact the treating source if the evidence does not support the opinion of the treating source on any issue reserved to the ALJ (including residual functional capacity and disability), and the ALJ cannot ascertain the basis of the opinion from the case record.  However, under SSR 96-8p, when there is no allegation of a physical or mental limitation or restriction of a specific functional capacity, and no information in the record there is such a limitation or restriction, then the ALJ must assume there is no limitation or restriction with respect to that functional capacity.  Here, the treating physicians did not provide an opinion as to exertional limitations, RFC or disability prior to the date of last insured.  Thus, the ALJ was not under a duty to re-contact Rockwood Clinic to clarify the evidentiary basis for an opinion which was never provided.

Based on the opinion of the consulting physician, the ALJ concluded Plaintiff was capable of performing light and sedentary work with additional postural and environmental limitations, and was able to return to her past relevant work as a secretary / administrative assistant; alternatively, she would not be found

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 19

disabled under the Grids.  (Tr. at 18.)  As noted earlier, that opinion was consistent with the medical evidence; the treating physicians did not provide any description of exertional limitations during the period at issue.  Additionally, there was no evidence Plaintiff, during the period at issue, suffered visual limitations because of retinopathy, physical limitations due to neuropathy or carpal tunnel syndrome, or mental limitations.  Moreover, the frequency of her medical appointments and hospitalizations was due, in large part, to secondary complications resulting from poor compliance with recommended diabetic treatment protocols.

Given the physical limitations to light and/or sedentary work, with the additional postural limitations, a vocational expert testified Plaintiff would be able to perform her past relevant work described as sedentary.  (Tr. at 1337.)  Alternatively, the vocational expert also testified if Plaintiff were required to spend only 50% of her time working closely with co-workers and supervisors,[7] the job numbers would be reduced but not eliminated. (Tr. at 1339.)  There was no error.

4.  <u>Witness Statements</u>

Plaintiff contends the ALJ erred when he failed to assess the credibility of witness statements offered in support of Plaintiff's disability claim.  Specifically, Plaintiff's father testified as to several instances when Plaintiff needed to be air ambulanced for

---

[7]That limitation is based on a finding by Dr. Lauby in January 2001, that Plaintiff would "experience coworkers and supervisors as sources of stress and fatigue."  (Tr. at 725, 1337.)

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 20

treatment of her diabetic condition prior to 1998.  (Tr. at 1294-1308.) Her spouse testified after their marriage in 1996 and move to Spokane in 1997, he observed Plaintiff suffered from severe back pain that limited her ability to sit, stand, and carry items, and recalled two incidents when Plaintiff was air-ambulanced to Sacred Heart, one occasion being sometime prior to 2001. (Tr. at 1303.)

A review of the ALJ's decision does not disclose discussion or credibility findings with respect to the witnesses' statements, in contravention of *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996), citing *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). ("[L]ay witness testimony as to a claimant's symptoms or how an impairment affects ability to work *is* competent evidence and therefore *cannot* be disregarded without a statement reasons that are germane to each witness.")  Accordingly, the captioned matter is **REMANDED** for additional proceedings, solely to consider the witness statements of record.

**IT IS ORDERED**:

1.    Defendant's Motion to File Excess Pages **(Ct. Rec. 17)** is **GRANTED.**

2.    Plaintiff's Motion for Summary Judgment **(Ct. Rec.  13)** is **GRANTED IN PART;** the matter is **REMANDED** for additional proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

3.    Defendant's Motion for Summary Judgment dismissal **(Ct. Rec. 18)** is **DENIED.**

4.    Any application for attorney fees shall be filed by separate motion.

5.    The District Court Executive is directed to file this

ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 21

1   Order and provide a copy to counsel for Plaintiff and Defendant.

2   The file shall be **CLOSED** and judgment entered for Plaintiff.

3        DATED November 7, 2005.

4

5                    S/ CYNTHIA IMBROGNO
             UNITED STATES MAGISTRATE JUDGE

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28   ORDER GRANTING MOTION FOR LEAVE TO FILE EXCESS PAGES, DENYING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, GRANTING IN PART
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR ADDITIONAL
PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g) - 22